First presenter is Mr. Shaw. May it please the Court, Pratik Shaw on behalf of the NFL Appellants. This Court should stay the precedent-defying preliminary injunction for two clear and independent reasons. First, the District Court should have dismissed this case at the outset. The NFLPA filed suit to vacate a final arbitration award before any such award even had issued. The NFLPA's failure to exhaust before racing to federal court is fatal, and that is true regardless whether the LMRA's exhaustion requirement is jurisdictional in the strict subject matter sense or instead in the looser but still mandatory procedural prerequisite to filing sense. Is it normally just subject to first filed? Yes, Your Honor. The normal rule after an award has been issued, then once an award is issued, a party can file in jurisdiction, and if each side files in different jurisdictions, then it's subject to the first file rule. That's correct. So there's no default in the Second Circuit or anything like that? There is no default in any jurisdiction. How it works is the Court, which is the first filed suit, they get to take the first shot at determining whether that was a properly filed suit depending on the context. Did anything prevent the Players Association from taking it and filing first here after the award was announced? No, Your Honor. I mean, they could have filed another appeal here? Your Honor, yes. There's nothing that prevented the moment after the award was filed, they could have filed in this Court. Now, after the award was filed, and consistent with exhaustion requirements, the NFL did file a suit in the Southern District of New York. So if this suit does become dismissed, that would become the first. It goes to New York, right. That would become the first. In fact, there was nothing that they could win the race and file in Texas if they wanted. Absolutely, Your Honor. You say that window's gone now. If something happens to this case, it goes to New York because that suit's been filed? Well, if this case were to be dismissed, then New York becomes the first filed case, and the other side has already filed a motion to transfer dismiss. That would then be litigated in New York. SDNY would have the decision as to whether that is a properly first filed suit. Our position, of course, is that it is a properly first filed suit. In fact, there is a lot of precedent that says the jurisdiction in which the arbitration award is issued, that's New York, should have jurisdiction. So, yes, our view is if this case is dismissed, New York becomes the first filed action, and then they can make their preliminary injunction arguments or whatever other arguments they want to make that attack the award in the district court in New York. Opposing counsel says that if this is not jurisdictional but rather jurisprudential, that the jurisprudential considerations work in its favor, work in their favor. The first one is that there's a contractual repudiation. Is the NFL repudiating this contract or seeking to enforce this contract? The latter, Your Honor. Obviously, they're seeking to enforce the arbitration process and this contract. This is not a repudiation. That's a matter of characterization, isn't it? Well, Your Honor, no. I mean, the NFL Players Association would argue they're attempting to enforce the contract. Sure, Your Honor. But the repudiation exception is a very narrow exception, and it means what it says. A repudiation means that an employer renounces or disclaims the arbitration process. So the typical case in which that arises is the employer says, look, the type of dispute that you're raising, that's not subject to the collective bargaining agreement. In that case, it makes perfect sense to no longer to excuse the exhaustion because there will never be an arbitration award. This is the exact opposite of that scenario where both sides agreed this is a dispute squarely addressed by the collective bargaining agreement and therefore subject to the collective bargaining processes. The sides engaged in that collective bargaining process. There was an arbitrator. There was a three-day evidentiary hearing. There was a written decision by the arbitrator. Nothing to indicate. When you talk about an exhaustion requirement, does the LMRA provide for an exhaustion requirement? Well, Your Honor, both the Supreme Court and circuit precedents have read the LMRA to provide that exhaustion requirement. So the answer is no, it's not provided in the LMRA? If you're asking about the text of the statute, I think the best textual hook, I would point to two possible textual hooks. One is Section 173D of the LMRA, which expresses that the desired method for resolving disputes is the one that's been set up in the collective bargaining agreement. We think you could read it in there. Or in Section 301, which I grant you the text is not clear, but what the Supreme Court has said is part and parcel with resolving an alleged violation of collective bargaining agreement is a resolution, a review of the arbitration process that's been set forth in that collective bargaining agreement. And so we think when you read the Supreme Court and circuit precedent, it has in fact found the exhaustion requirement to be part and parcel of the LMRA. If this is jurisprudential rather than subject matter jurisdiction, another ground that the opposing counsel relies upon in their briefing is that further proceedings may be futile. Is it futile, or will they have an opportunity to argue that they were not allowed to present the evidence, assuming argument no, this is the case, that the NFL withheld evidence? And they present that argument and present all that evidence in some format, regardless of whether it's actually admissible, they'll have an opportunity to make that full argument than any other proceeding? Your Honor, they can make the same arguments that they made in the district court in the SDNY action that was properly filed after the arbitration award is. So they can make the exact same arguments or whatever arguments they want to make in that forum. But I would point out is they did not raise the futility exception at all. The only exception. In the briefing. They give two reasons in their briefing that we asked for. It says futility and it says repudiation are two common reasons that jurors predict. So I wanted to address things in the brief since you haven't engaged in that. Sure. But yeah, no, this is not a case of futility. Futility, again, are cases where you don't have a forum in which to raise any of these things. Remember, their claim, which is a fundamental fairness claim, that was squarely actually addressed in the arbitration. The central claim is based on the testimony, the evidence, the opinions of Kia Roberts and whether that was transmitted to the commissioner. That became the central dispute in the arbitration itself. It was fully aired. The arbitrator considered it and said, look, there is plenty of evidence in the record that shows the credibility concerns. But the arbitrator conceded that he was giving deference to the commissioner's determination. Is that right? Yes, Your Honor. And that is how the LMRA works. So then it matters what information was given to the commissioner, doesn't it? Well, yes, Your Honor, but a couple different things. One, the arbitrator found that the credibility concerns that are at the core of Kia Roberts testified at the arbitration. Remember, they had a chance to examine her at the arbitration, and she said, all of my interview notes are reflected in the league report. She attached a special appendix to the report, which is Exhibit 99, which sets forth the inconsistencies that she found in the victim's testimony. That is part of the league report. And then if there is any doubt at all — Does the report include her recommendation that there be no disciplinary action? The report does not include the recommendation of any investigator. The answer is no, it does not include her recommendation. No, it does not, Your Honor. Under the collective bargaining agreement, no recommendations are included in the report unless requested by the commissioner. And so this wasn't this sort of conspiracy to provide only one perspective. No recommendations were included in the report from any of the investigators. And if there's any doubt about this, Judge Graves, at the arbitration, in addition to the fact that they had the opportunity to examine Kia Roberts, who said everything is in the report, they also had the opportunity and did examine the other investigator, Lisa Friel, who testified, testified — this was an extended exchange between opposing counsel and her — that those concerns of Kia Roberts, both as to credibility and the fact that she didn't think there was enough evidence, that Kia did not think that there was enough evidence, Ms. Roberts did not think there was enough evidence to support a violation, that, too, was communicated to the commissioner in meetings by Lisa Friel and Kathy Lanier. And just let me give you the record sites for that, just so you have it handy. It's — ECF-213 is the arbitration transcripts. It's the Day 2 transcript, page 322, lines 18 to 25, and then it spills over to the Day 6, lines 4 through 16. Now, I am sure the other side will get up and say it's not clear testimony. I think you can read those pages. She squarely says those concerns were communicated. It is true she was subject to further testimony and said, well, do you remember the exact words you used? She didn't remember the exact words. But those are the exact type of testimonial evidentiary disputes that are supposed to be resolved by an arbitrator and not by a Federal district court sitting to review under one of the most deferential standards known to law, which is the standard applicable to collateral challenges of a labor arbitrator's decision. Is it unusual for the commissioner not to request for the findings to be included, or is that the normal? I know it's the default, but is it ordinarily something that you would ask for? Well, Your Honor, I'm not sure I can say there's an ordinary practice, because this personal conduct policy itself, as the hearing officer, the arbitration officer said, this is one of the first times that this particular provision, this particular policy, which was just enacted recently, has been actually put into effect, and we have the full on, you know, hearing officer decision, commissioner decision, hearing officer decision in that. So I don't think there has been a practice under this new personal conduct policy that we can say, well, no. Under the old practice, they would get the ---- Yes. My understanding is ---- Why would that change? Well, Your Honor, it's because actually in the initial versions, as I understand the policy, it was supposed to be the disciplinary officer that made the decision. That was challenged by the player unions, and it changed that the commissioner has to have the sole authority to make the disciplinary decision. And because it's the commissioner that has the sole authority, that is what happened in this case. The investigators provided their findings. Now, the personal conduct policy also provides that the commissioner can consult outside advisors. So we did solicit the advice of the outside advisors. And so my guess is that in implementing this new personal conduct policy, that's the mode that has been implemented. The investigators investigate. He consults. I think you've answered my question. I have three quick questions. Is there a mechanism for reconsideration before the arbitration goes for the district court? Is there some sort of we think you're wrong process built in? There would be nothing. There's nothing. There's nothing built in. There's nothing in the rules that permit it or prohibit it. I'm sure they could say, look, you made a grave error. Please correct it. Correct it. But that's not built in. It's not built in one way or the other. Okay. Second question. In your brief, you argue that the Players Association has taken an inconsistent position in that Green v. Packer case. Has the NFL ever taken the contrary position? No, Your Honor. The NFL has never taken the position that you can go to federal court to challenge an arbitration award before that arbitration award is issued. Okay. My third question has to do with irreparable harm. Yes, Your Honor. Assuming arguendo, and I am not foreshadowing, assuming the arguendo that you are not successful in having the case dismissed for lack of jurisdiction or for jurisprudential concerns today, how do you satisfy irreparable harm showing necessary in order to get a stay? Sure. Even if you completely knock out of the ballpark prong one, how do you satisfy prong four? Sure. So, of course, I'll start by just saying it is, of course, a sliding scale, and we think we are very strong on the merits. But to answer your question about the balance of equities, I think to understand the significant harm worked upon the NFL, it's helpful to take a step back. And it's not just isolated to this case, but the collective bargaining agreement has a very reticulated disciplinary regime that was subject to extensive negotiation between the NFL and the Players Association. The agreed-upon regime embodied in Article 46 of the collective bargaining agreements envisions commissioner discipline, a arbitration process that's expeditious. The timelines are very quick, three days for appeal, ten days for a hearing within that appeal, and then a decision as soon as possible. And then if that punishment after that arbitration proceeding is upheld, then the discipline is supposed to go into effect immediately. That is the regime that has been negotiated upon. Because that's what's agreed to doesn't mean that you're irreparably wrong. Thank you for not correcting my mixed metaphor, and none of my colleagues did either. Maybe I should not interrupt, but the position that he's in your career is somewhat limited, and if someone is suspended for a certain amount of years and it proves that he was right, you can't give them back those days or those games that the person was suspended. Yes, Your Honor. I understand that. Whereas if it works the other way around, you can always suspend them down the road some other times. Here, Your Honor, is the problem with that reasoning, is that the claim, the NFLPA's claim of irreparable harm to Ezekiel Elliott, is no different than the claim of irreparable harm to any player that is ever suspended under the collective bargaining agreement. And if that suspension in and of itself works irreparable harm, then they can go to federal court and get a preliminary injunction or throw her to stay in virtually every case. And this is not just a hypothetical. This happened in the Brady case. There was a suspension issued. It rolled over to the following season, and you can imagine circumstances where it can be used as a manipulative device. For example, a player who is in his last season and is planning on retiring, if you can claim irreparable harm and get your preliminary injunction, that discipline will never be served. But you have precedent. Why isn't the Brady case bad for you in that regard? Well, Your Honor, it's very good for us, because what the Second Circuit said is no, these sorts of claims are wrong. And that is why we're here on it. But not at the prong four right at the beginning. Well, Your Honor, that wasn't an emergency PI case. But, Your Honor, the reasoning of Brady strongly favors us, because now we have a tribunal that's actually adjudicated. So if you put aside the threshold claim that they're in the wrong court but just get to the fundamental fairness claim, those sorts of claims, the Second Circuit is clear the standard of review is exceedingly narrow and that the type of claims that they're bringing, these fundamental fairness claims, are almost impossible to succeed. There is only one case in any court of appeals under the LMRA that we have found that has ever recognized a fundamental fairness claim, and that happens to be from this circuit. It's called the Gulf Coast case. It's cited on page 6. You started out answering the question about irreparable injury. Yes. Isn't your argument in that connection undermined by the fact that after the award, in this case, the NFL determined that Elliott could play another game? Well, Your Honor, that was out of a discretion with the interests of the club in mind. However irreparable the injury, that game, that Sunday night opening game, he could play in that one. Well, Your Honor, look, the NFL had the authority to force him to sit that game, but out of respect to the clubs, the practices had already begun, and the NFL set a de facto deadline there of Tuesday at 5 p.m. The arbitrator didn't do that. So out of deference to the clubs, it allowed Ezekiel Elliott to play in that game. But make no mistake, there's a good reason. He sustained an injury as a result of his playing in that game. Is that your view? Look, Your Honor, I think our view is that the collective bargaining agreement is set up to administer expeditious punishment once the process has been complete, and if you allow those injuries and those disciplines to be rolled over a season or longer, then that undermines the significant interest that the NFL has in punishing its players when they commit offenses like domestic violence. How can the NFL undermine its own interest? In the way that Judge Graves has asked you, you haven't quite answered, I don't think. When the NFL is being benevolent or discretionary or whatever you want to say and letting the player play, then you have undermined your argument that every single game is an irreparable injury. Well, Your Honor, look, I think the longer the suspension is delayed, the longer the injury. The fact that they let him play consistent with league custom in that one game with the knowledge that he would then be suspended for the next six games is entirely different than saying the suspension can be rolled over the entire season or longer. And so I think there is a significant interest when you look at how this collective bargaining agreement has been negotiated. It would eviscerate the bargaining, the bargain for terms of the agreement. And if this was just one isolated case, that would be one thing. But as I said, Mr. Elliott's injury is no different than any other player suspended under the agreement. They can always make that same argument and turn federal courts into an automatic preliminary injunction. That is not what anyone has envisioned. And there are serious interests on the other side. The league has a serious interest in deterring domestic violence and other violent conduct by its personnel. That was the idea behind this policy. And allowing the punishment to be postponed indefinitely undermines that interest and the deterrent effect that's part and parcel of that. Now, what I would come back to, Your Honor, is if it is a close call, if you think it is a close call on balance of equities, then it is, of course, a sliding scale. We think on the merits. It is not a close call. That both in terms of the district court exceeding its authority to adjudicate a suit seeking vacater of an arbitration award before that arbitration award has been filed, that is a clear improper exercise of authority. And then on the merits on fundamental fairness. Is Planned Parenthood v. Abbott your best authority for that? Your Honor, I think there is a lot of authority. That's certainly one. But there is a lot of authority. Supreme Court Authority Circuit precedent, Supreme Court Misko, Vaca v. Sipes, this circuit, Rabelais, Daigle, we've cited them all in our state papers. There is not, in fact, we searched. If you're looking for cases in which a party that's subject to a labor arbitration has filed before the arbitration award is coming, while that arbitration is going on, so it's not a repudiation case, we could only find two instances in any court where that's happened. No court has allowed that to go forward. And in the two instances where the decision eventually came down, the court did not change its result. It's merited in one of the cases you're relying on. I'm sorry? Merited in one of the cases you're relying on. No, because that wasn't a case. That was a case where, now that is a repudiation case, Your Honor, because that's where a case where the employer said, look, the collective bargaining agreement doesn't apply to this dispute. What I'm talking about is once the parties have decided they're going to subject it to the collective bargaining arbitration, there is no case from any jurisdiction ever, at any point in the history of arbitration, where a court has allowed someone to come in pending the forthcoming arbitration award to challenge the validity of the award. They have not cited a single case. We have scoured the earth for a case. They do not exist. This would be the first one in the history of arbitration jurisprudence that would allow that to happen. And we urge this Court not to have such a precedent-defying decision. If I may reserve time for rebuttal. Yes. Thank you, Mr. Sopcich. Thank you, Your Honor. You've gone over your time. We're going to have to suspend you for six weeks from practicing before this. I'm kidding. I'm kidding. We had a lot of questions and all. Would you please add about ten minutes to the other side as well, so that we're equal on time? I'm sorry, Mr. Kessler. Thank you, Your Honor. My name is Jeffrey Kessler. I'm representing the appellee, the National Football League Players Association, and on behalf of Mr. Ezekiel Elliott as well. Your Honors, I would like to spend most of my time discussing the exhaustion issue and the fundamental fairness issue, which is where your questions were. But let me just briefly note at the outset, since this is where you ended, the Supreme Court has made it very clear that in a case like this where a stay, the requirements that the movement show it will suffer irreparable harm is mandatory. It must be shown. They have not come close to showing that. And on that ground alone, the stay should be denied. But let me devote my attention mostly to the two substantive points that counsel made. Under our precedent in Planned Parenthood v. Abbott, where each side can show harm, but if the prong one is so strong, but the other is awash, we go on prong one, don't we? Your Honor, that is correct, except here there is no showing of harm at all. As Your Honor pointed out. But it would undermine. I did ask him some hard questions about why there might not be a showing of harm. But his point is that it would undermine the entire discipline system, or whatever you would call it, because you would always get a stay. And in all due respect to the counsel on the other side, the CBA provides that after discipline is imposed, the player gets to play. That's the CBA's decision unless and until the arbitrator affirms the discipline. Further, when they had an opportunity to suspend the player before the preliminary injunction, they chose not to suspend the player. Should they be penalized for their benevolence withholding? No, I don't think it's benevolence. I think what it establishes, as the CBA shows, that there is no real league interest that's cognizable in this balance. In the end of the day, the court of appeals will decide whether the arbitration should be set aside or not, and they will suspend the player or they won't. Their interest will be fully vindicated. I should point out, for example, in the case of Mr. Brady, which they cite, they didn't even seek a stay in the court of appeals. Mr. Brady played an entire season, and they did not run in and say, we need an emergency stay because their CBA will be undermined. So, again, with all due respect to counsel, there is nothing there for them on their side of the balance. But let me go to the exhaustion points. Your Honor, there really are four reasons. Your Honor noted two. But there are actually four reasons why exhaustion has been satisfied here, and in fact the first two are the ones that are threshold before you get to the exceptions, because the first two are, has it been exhausted, before you need an exception to whether it's been exhausted. Our first argument is, in this set of facts, where we didn't not initiate the arbitration, we did the arbitration, where we presented our arguments that went to the deprival of the material and pertinent evidence that we thought was necessary. We argued it, we briefed it, we closed the record, and the arbitrator entered what the NFL characterized as final binding decisions, rejecting that. So when you look at the purposes of the exhaustion doctrine, there was nothing left to exhaust. We had done exactly what is required by this prudential doctrine. And I'm not going to spend time even arguing the jurisdiction, because I think the NFL has almost conceded that on the basis of the final binding decision, there was nothing left to exhaust. We need to argue jurisdiction, because our precedent, our binding precedent holds in the most related context that it's jurisdictional. Now, and we don't have a, an ARBA hasn't come in in a case that's related in the circuit. So there's an argument that our binding precedent controls, even if ARBA would eventually control in the Supreme Court. Let me address that as well, then. This first argument would apply even if it's jurisdictional. In other words, even if there's a requirement to exhaust, everything was done at that time, and the only thing, and in fact, we told the judge when we filed for preliminary relief, don't issue the decision until the award comes out, because we knew the award was coming any minute over Labor Day weekend, which was going to have an immediate irreparable consequence on the player. But there was nothing left to exhaust, and the Court issued his decision, actually, after the award came down. You know, and by the way, the award, proving our point, had no further consideration of the deprival of the evidence. Those were final binding decisions made, as the NFL said, before the award came down. It wasn't reconsidered. It wasn't mentioned. What if it had reconsidered in some part? There was no procedure to reconsider it, Your Honor. You asked a question about that. The arbitrator made binding rulings that were finished, and he made it very clear during the hearing all he was going to do now was, based on the closed record, decide, in fact, whether he found the suspension or not. So I just don't think it was there. It's not in the CBA. There's no procedure for doing that. And in fact, right now, Your Honor, under arbitral law, the arbitrator has divested himself of jurisdiction. It can't he can't even reconsider now to answer a question. The point that the arbitrator makes a ruling that's somehow binding, that it's final as to that part of the arbitration. When the record is closed and when, because this is a prudential document, I believe. I'll come back to jurisdiction in a second. When the circumstances are such that by not, in effect, the car is, the tractor trailer is running at your house, and what the law is, you don't have to wait to be run over. If we had waited until the decision came down, the suspension would have gone into effect before we could have even have obtained preliminary relief to prevent him because he immediately would get pulled off the field in terms of practicing for that week and disrupting the whole plans. So in that circumstance, I believe everything's been exhausted. But my second point, and this goes to jurisdiction, we believe that it is not jurisdictional and the importance of this is if it's not jurisdictional, then subsequent events matter. It is absolutely true that subject matter jurisdiction, you just look at the events at the time of filing. But it is well established, you look at subsequent events. And in fact, Your Honor, to give you one more authority on that, and I apologize, we didn't have this soon. It was in response to something in the NFL's last brief. I'd like to hand up, if I may approach the bench, if that is all right, the case of Ward and his second in 2014. Is this an authority that you've given the opposing counsel before argument today? Yes. It's right here, Your Honor. So you're just giving it to him now? I'm just giving it to them now, Your Honor, yes. Do you know of our practice with 28Js and then courtesy to give documents before the hearing if you have them with you and copies of them and that sort of thing? Frankly, Your Honor, we just concluded this morning when we looked at this authority and it was so on point to their brief. So I apologize to counsel. It's so on point, why didn't you give it to him when you came in the courtroom? Your Honor, then that's my fault and I take responsibility for that, okay? I apologize. I think you're free to refer to it. Oh, absolutely. He'll have his rebuttal. I don't mind handing this back to you, but I think I can listen to you argue that case. Whatever you prefer. All right. And I'll read the citation to the record so that it's there. The citation is 753 Fed Third 165. And this came up in the context of the civil rights statutes, Title VII, and also this was the Texas State law equivalent. And what the court of appeals said here is they examined is the no action letter requirement in the civil rights laws in the Texas State equivalents, is that jurisdictional or not, or is it just an exhaustion prudential requirement? And the Fifth Circuit said it is a jurisprudential requirement because the statute did not clearly provide for it in a way that was jurisdictional. It is Gorman v. Verizon, Wireless, Texas, 753 Fed Third 165. And they said it was because the statute in the post-Arbor world did not clearly provide for it to be jurisdictional in the statute. It was not. Then they said the consequence was in that case a no an action letter was issued after the complaint was filed. And what the court said is since this is not jurisdictional, we could look at subsequent events, just as you do in ripeness, Your Honor may know. In ripeness things, you look at the facts at the time of the ripeness motion, not at the time of the complaint. And here the opinion, the award became final and issued even before the preliminary injunction, let alone at the time of the argument, you know, subsequently. In fact, in Gorman it was at a much later time when the no action letter was issued. Did you accept your position that once the record is closed you can go ahead and file? Your Honor, only when you say go ahead and file. People will only file when they could go through one of the very narrow requirements of the FAA as interpreted through the LMRA. Those requirements are statutory. They are specific. I would imagine in most cases there's no basis for going in at all. In fact — The answer to my question, no, no court has ever accepted your argument that it was okay to go ahead and file once the record is closed before the award is announced? Your Honor, I'm not aware of any case, and neither is the NFL, that has ever addressed the circumstance like this where an award was about to be issued, all the arguments have been made, the record had been closed, the rulings had been made, and it was just the inevitable issuance of it that had not happened yet, and then the decision came down. So, Your Honor, I think in that sense this is a case of first impression for this Court. How do you distinguish it from the Green Bay Packer case that you took the opposite position? Well, we did not take the opposite position, Your Honor. Your Honor, that was the — In Ohio, in the District of Ohio —  Yes. We did not take the opposite position and say it needed to be dismissed because the award had not been announced at the time that the player was signed. No, Your Honor. No, Your Honor. Here's what we said in that case, to be very clear. We said he had not exhausted, and in fact, we don't deny that the exhaustion doctrine applies. We think it's been satisfied here, but in the facts of that case, it's very important, Your Honor. Okay? He had not raised any grievance or arbitration over the issues of his lawsuit. So what happened in that case is that he filed an action saying, rather than file the grievance procedures, which was provided for in the CBA, I'm going to file a lawsuit. So it wasn't a question of the award not being issued. The proceedings had not started. And I would agree, Your Honor, if we came into court without starting the arbitration, without going through and getting the rulings we got, without an award subsequently being issued, we would be in a very different situation. And so what happened there is he didn't even start the grievance proceedings, number one. So, yes, we said you haven't exhausted your remedies under the LMRA. It's a valid doctrine. It just doesn't apply here, but it absolutely applied there. But to go so we have exhaustion before you get to the exceptions, either because everything was already exhausted by the argument going through there, or because the subsequent events now establishes no purpose. And the only purpose, and Your Honor has touched upon this, that they can articulate for what is the harm here is that they can't invoke the first-to-file doctrine. Well, there are three arguments about that that render that completely irrelevant. First of all, the exhaustion doctrine, as the Supreme Court has articulated and this Court has, has nothing to do with first-to-file. The purpose of it has to do with whether or not you've given a fair opportunity. It has nothing to do with the first-to-file doctrine. Secondly, there is no presumption as to where you should file. Under the LMRA, it specifically gives you jurisdiction to file in any district of the country for venue, wherever the employer or the union or the employee is located, wherever you can get personal jurisdiction, you have it. In contrast to the FAA, which is 100 years earlier, or a long time earlier, was in the 1920s, not quite 100, okay? A long time earlier, which says you should file an FAA for jurisdiction in a specific location that's demonstrated. Why didn't you file prophylactically here after the award was announced? Why did we file prophylactically? To win the race. Okay. Well, we don't think they win the race because, again, this goes to my last point about this. The first-to-file doctrine is not immutable. And you look to the factors as who's the natural plaintiff. Here, this is important, the NFL never contracted for in their CBA a venue clause, which they could have done. So we said here's the venue if you ever want to sue. But while I'm getting to the first-to-file point, Your Honor, I apologize, on the first-to-file point, okay, they don't have to file any judicial action to have the suspension in the award enforced. As the employer, they immediately suspend and they immediately don't pay. So this is not a case where the employer has any need to go to court. The only reason they would go to court is to preempt the natural plaintiff under the first-to-file doctrine who was being aggrieved. We had a reason to go in. In those circumstances, the law is pretty clear. The first-to-file doctrine doesn't even apply. They filed an action to confirm the award. Didn't they do that in this case? They did, Your Honor. They didn't have to do that is what you're saying. They would never have to do it because they had the full power to enforce the suspension and not pay as the employer without going to court. Employers go in. You're in the case incorrectly prematurely, but you've got a case going over here. Of course they're going to file. They're going to need to file so that they can get some court to adjudicate that your case is not meritorious so that they can have a placeholder. Maybe they wouldn't need to in every other case but where you've allegedly jumped the gun, but you still haven't answered my question. Why didn't you file out here whenever you got the award? Your Honor, if we were to lose this appeal on the grounds that we haven't exhausted, we would immediately file below, and I don't believe the first-to-file doctrine would apply, and we would be in exactly the same place, okay, which is the reason why as a jurisprudential matter, which is when you're not dealing with an issue of subject matter jurisdiction, as I do not believe that you're dealing with here, that that subsequent development, just like in the EEOC cases and in the Gorman case, they don't dismiss because all that it would do is result in a refiling of the case based on the subsequent developments. Now, just to go to the jurisdictional point, in the meritorious case, it's what's very important, is the Supreme Court made clear in Arbo, not just the Fifth Circuit, many, many circuits, and the Supreme Court itself had been using the word jurisdiction in a loose way, and the Supreme Court said, look to the statutory text or otherwise don't follow the precedents. That's what Arbo says. And if you look to the statutory text, you ask the question, there's nothing remotely in the text. The paragraphs he cited don't mention any need to exhaust. They don't come close to doing that. And Meredith cited the Vacca case as its sole authority. The Vacca case applied the repudiation doctrines and clearly was not a jurisdictional question. You could search the whole decision. There's nothing there about jurisdiction. And as pointed out, Meredith itself found jurisdiction based on repudiation. And of course, if it's subject matter jurisdiction, you wouldn't have exceptions. But Meredith is the one where the employee didn't even seek to compel Arbo. That's correct. But I'm just saying it shows it's not jurisdictional because they found there was jurisdiction. If it had been jurisdictional, they wouldn't have found jurisdiction. There are no exceptions to subject matter jurisdiction. Then you have to show you've exhausted, if it was subject matter jurisdiction, which it's not here. Now, those — based on those reasons, then you get to the exceptions, and it's interesting you got asked about the futility exception, which is in our papers. There was a futility exception here. This comes from the Supreme Court's case in Glover. And Glover was a race discrimination case. And Glover involved a claim where under the CBA, the employer had the authority to pick who would be the arbitration panel. And it was pointed out. So CBA authorized it. Just like here, the commissioner had the authority to pick Mr. Henderson. Okay? So it's exactly the same thing. And the Supreme Court said in Glover, but we can tell on this set of facts that this panel is never going to provide any relief here based on who this panel is. So it is futile, and you don't have to wait to do a meaningless remedy. The application here is once Mr. Henderson denied all of this material and pertinent evidence under the language of the FAA in terms of that, once that had happened and given the fact of how he was running this arbitration in depriving us of those rights, and so this in part bleeds over into some of the facts in the case, it was totally appropriate to find that as happened, that what was going to happen, it was just a question of whether it was Saturday, Sunday, or Monday, or Tuesday, it ended up being Tuesday while we were arguing that this decision was coming out affirming it. So there was, again, at that point, at that point, there was complete futility with respect to that exception. But under a normal case, you don't, a normal case in court, you don't have interlocutory appeal every time you disagree with how a judge is doing things. You've got to wait until the end of the case and then you appeal all those matters for the appellate court to review. And Your Honor is quite right. In the litigation, we have the final judgment rule, although we have interlocutory appeals and rules that address that. Here we have the prudential exhaustion doctrine. So Your Honor is quite right. The general rule, as I argued in the case that was pointed out in the Packers where someone had not initiated the proceeding, had not gone through that, the general rule is that you have to exhaust. But the doctrine is a jurisprudential doctrine, so you look at, given the exigent circumstances, the subsequent developments, the fact that everything had already been presented and decided, the fact that irreparable harm was imminent and there would literally be no other way to go in, in terms of the irreparable harm, because if we had waited for the decision, we'd have to first then file papers, a new set of motions, schedule a motion. Meanwhile, the date will have passed, which is what happened. They issued the decision just on the Tuesday, which was the relevant date to decide, you know, whether or not you could be able to play that week or not. So the whole that all would have been destroyed had we not waited in terms of that. And I think it's very important on fundamental fairness, because you asked some questions about that. We are not arguing in this case some broad, amorphous fundamental fairness doctrine. We are arguing the fundamental fairness doctrine that this Circuit recognizes, which is linked to the text of the FAA. This is very important. But this is not some broad opening of this case. The text of the FAA by Congress makes it very clear that the Court should intervene when material and pertinent evidence is not considered as part of the proceeding. That is the standard. That's what this judge found. And at least for purposes of a P.I., I believe his factual findings are clear error. The whole P.I. is abuse of discretion, because we're on a stay right now in terms of where we are. And unless it could be found that it was clear error and an abuse of discretion for this judge to find on this preliminary injunction that that FAA standard, which is not disputed, is met, there's no dispute. And, in fact, no circuit, no circuit doesn't say you should look to the FAA standards for guidance. There are some circuits that may dispute what's the content of fundamental fairness. Is it broader than that? But the Supreme Court in Misko made it very clear that the courts must apply, look to the FAA standards, and this is square on in section 10a of the FAA. So that's what's being applied here. So, again, I don't think they have any he argued that there's a strong likelihood of success here. No, I don't think that's true at all. When you get the full record, and by the way, you don't even have the full record on the preliminary injunction. That just arrived in the Fifth Circuit this morning. I believe. It certainly is not up on this stay record. We have it from the district court, don't we? This morning it arrived, Your Honor. We just had it already by looking at the district court docket, right? I don't know what your Honor acts as to. I don't know what. So I apologize. If you've gone to the district court docket to look at other things, then I apologize for that. Then I'm just saying it just arrived. My point. For any emergency matter, you'd look at the relevant record that the district court can see. Thank you. I'm sorry, Your Honor. I apologize for that. Then what my point is more is the difference between a P.I. and the final petition. So, for example, we're seeking discovery below, which is going to further explore this fundamental fairness. That's not in the record at all. That's what the court will have ultimately below to make findings. There might even be an evidentiary hearing that. You're seeking discovery? Yes, Your Honor. Yes, Your Honor, in a case where, for example, and this is what's unique here. So under the CBA, the NFL chose, they chose in their new policy, you heard it was a new policy, that when there's a case where there's no criminal prosecution, because they recognized that was going to be a weaker case, and previously the NFL never followed cases that was no criminal prosecution, when there was no basis to go forward, but in those cases, they chose a new policy which said there must be, and this was their words, credible evidence in order to sustain the discipline. So they erected themselves a higher standard. In the context of that proceeding, where you have the lead investigator concluding not just that the witness was not credible, but that looking at all the corroborating evidence, there was no basis to corroborate the claims, this made this witness, the most material and pertinent witness that you possibly could have in terms of this. It exceeds any definition that Congress had in mind in terms of material and pertinent because of the unique circumstances in this case of this policy that was put in. Then you compound that with, under the CBA, and you'll see this in the arbitrator's reward, he says, I defer to the fact findings of the commissioner. He then says, but I don't know what those facts are. He says, whatever they are. The reason he doesn't know is because, in fact, neither the arbitrator nor we know what the commissioner knew about the Keir Roberts evidence that was in fact suppressed. You heard counsel say, look at Ms. Friel's testimony on that. I have no problem with that. Look at footnote 9 of the district court opinion, which details how, in a space of about six or seven minutes, Ms. Friel, who herself is an attorney and therefore very familiar with the process, changed her testimony of what was told to the commissioner, I think, at least five different times in a manner that was so confusing that you can't tell what the commissioner was told, which is what prompted us to say, if you are going to defer to fact findings of the commissioner, which is what the standard was going to be, okay, how can we have a meaningful opportunity to contest that without knowing what the commissioner knew? What, on this peculiar record, where the lead investigator comes in and says that she was kept from meeting with the commissioner, she was kept from meeting with the advisors of the commissioner. Can we ask you a couple more questions about subject matter jurisdiction? Please. First of all, though, do you seek an expedited hearing on the merits if this case is to get to the merits? I'm going to ask the other side or else maybe Judge Prado will ask that. Do you seek for the merits to be set preferentially? I think they have asked for that on the preliminary injunction. We have no objection to that. So we don't, that's up to the court if you like to do that. What I would say, though, is since we're going to be proceeding to the actual decision to vacate, that it might be more efficient for the court to, if you deny the stay, to wait for the decision on whether to vacate, get the complete evidence, and have to decide this only once. Because if you review the preliminary injunction on expedition, you're going to be under the abuse of discretion standard. And actually, when we get to the end, you're under basically a more liberal standard of reviewing in terms of that. But we're only talking about the preliminary injunction, right? Yes, but the short answer is I have no objection to an expedited briefing on the merits. Can you please tell me your best authority, if this is indeed subject matter jurisdiction and you are indeed premature, what is your best authority that you win anyway? The best authority for us winning anyway is number one, that exhaustion, even whatever the doctrine is, the Supreme Court has made it clear, whether it's jurisdictional or not, in the words of the Supreme Court, that you look to see whether there's a meaningful opportunity left to pursue your rights. And I don't think anyone disagrees with, if you call it jurisdictional, you still have the exceptions to deal with, including futility. That's Glover. That's Vacker. That's the Fifth Circuit's. Why is this futile if you can raise all these points and move for your discovery in our district court or in New York, wherever? Your Honor, it was futile at the time we filed the case because we already presented all the arguments to Mr. Henderson, who served as the arbitrator, and he already fully, finally rejected them with no room. It doesn't mean you don't have some way to get relief here. Well, we had no way. I think what futility refers to, as Glover talked about it, it should we send you back to do something more with the arbitrator, or is it pretty clear the arbitration outcome is already preordained? That's what they mean. It's not, can you get relief in some other court or in some future date? It's in the arbitration. What was clear here, and the decision confirms this, even if it's jurisdictional, the decision confirms it, there was no further reconsideration or ability. The record had closed, and I use the NFL's old words. They described his rulings that we were seeking to stop as being final, definitive, and binding when rendered. They were rendered before the, in effect, the final formal act came when the award came out. We have a written decision that rejected this. We have final binding rulings. So in that case, I believe even if it was jurisdictional, which I do not think it is, we would come squarely within. However you characterize it, the purposes of exhaustion would not be furthered here. The only reason we're here is because of the NFL's desire to try to argue first the file. That's the only reason we're here on this appeal, and that is not a policy connected to the LMRA. It's, in fact, it's the reverse. The LMRA says sue anywhere. It's. Thank you, Your Honor. I appreciate the extra time. Thank you. All right. Your six-week suspension is under consideration, will be referred to an arbitrator to decide, never mind. Mr. Shaw, they gave us a copy of a case and cited it. Do you need more time to respond to that? And if you do, the court will give you a day or two to try to get us something to respond to that since it was brought up here without you having the benefit of the case. That's up to you. Sure, Your Honor. We may submit a short supplemental letter in response to that authority. If it would be helpful to the court. Let me start with the exhaustion issue since that seemed to be the primary issue discussed. Opposing counsel raised a couple different reasons as to why this case, in their view, was exhausted. The first was that there were these interim or interlocutory evidentiary rulings that he describes as final and complete, and so you can go there. That would be akin to in a trial, you have a pretrial evidentiary ruling or a motion in limine ruling, and then the appellant goes to court and gets review of that. That is not how exhaustion works. You wait until the decision is issued, and then you seek review of that. And he cannot point to a single case. Again, in the history of arbitration, there have been a lot of arbitrations. There's not a single case where anyone has been able to go after an evidentiary ruling in the arbitration and say, that evidentiary ruling is complete, so now I'm invoking Section 301 of the Labor Management Relations Act to seek review. That authority does not exist. He doesn't just say the ruling was complete. He says the record was closed. Well, Your Honor. The proceedings were concluded. You agree with that, though? Well, Your Honor, in the sense that when they filed the suit, the arbitrator's decision hadn't issued. It is true the evidence was done, but there was still, for example, in closing argument, Mr. Kessler argued based on the fact that the witness couldn't testify that the suspension should be lifted on that ground. Were the closing arguments still ongoing at the time that the suit was filed in Judge Mazant's court? I believe that's true. Oh, they had already been completed? Yes. So I guess the evidentiary record was closed. You were awaiting the decision to do it. But again, there is no case that's ever happened, and for good reason. Courts make decisions, and it may render that moot. And again, that implicates, what I will say is that implicates Article III standing considerations. At the time that they filed suit, and again, if you look at their pleading that they filed in federal district court, it's – You didn't raise standing, did you? Well, Your Honor, we did. We raised it in the district court for sure. And in our supplemental letter, we did say that – and this is the way in which we raised it – we said if you construe this as not jurisdictional, then it raises Article III concerns. That's in our supplemental letter. On page two of our supplemental letter, there's a paragraph that describes the Article III standing concerns. And the way we raised it is that if you don't construe this as jurisdictional, then what you could have a situation is where a court is then adjudicating a case in which the sole relief sought is a petition to vacate an arbitration award that has not yet issued. That is not a redressable injury. And you have to have a redressable injury. So the way that we raised Article III in this court was to say that is another reason why you should construe this statute as this court did in Meredith, as jurisdictional. So I think there are serious Article III concerns raised by their argument, not by ours. Now, the second argument – That's not what we have here. We have an award that has issued, don't we? Right. That is their second argument, that they say you can cure this defect at the time of filing. There was no award. They say since the suit was filed, there is now an award, and that cures the defects. A couple of responses there. In terms of a jurisdictional defect, that cannot be cured by after the fact events. That's undisputed under the Supreme Court's decision in Grupo Dataflux. You can't cure jurisdictional defects. Now, and to say that this is a jurisdictional defect, the – this Court's decision in Meredith says it, and the case that they just cited to this Court, Gorman, obviously involved a different statute, involved a different situation. Here, there is square circuit precedent. So the question is, does Arbaugh somehow implicitly overrule this Court's precedent in doing it? That's a very different posture than Gorman. Now, even if it is not jurisdictional, though, and this Court doesn't want to resolve that question as to whether it's jurisdictional or not, recognizing an after-the-fact exception to say that it could be cured would, in large part, eviscerate the exhaustion rule, because then you would have parties coming, filing placeholder lawsuits in case they eventually lose the arbitration, and they have now run to court, and they are now the first to file. They have manipulated the forum and manipulated the rules in order to do it. That would unleash a wave of these placeholder lawsuits. And again, that has never been recognized in the history of arbitration law. They can't — they have not cited a single case. We have not found one. In fact, the — They manipulated the forum, but the LMRA doesn't indicate where a forum should be. Well, but what the LMRA does indicate is that you wait for the award to issue, and then you go file. If you can file a placeholder suit — well, Your Honor, the Supreme Court's interpretation of the LMRA. All right. Okay. Now, in terms of the fact that they have no case, you look at our cases. The few times a litigant has ever tried to do this, that is, file a premature suit while the arbitration is still pending. You have decisions from the Sixth and Seventh Circuits cited in our State papers, Kaiser and Macon. They say that does not — that is not permitted. But we would create a circuit split were we to do something different today? You would create a circuit split with the Sixth and Seventh Circuit or any other circuit. No court has ever — one, litigants don't think to do this even under the established authority. But when they have tried to do it in the Sixth and Seventh Circuit, they've been smacked down, lack of exhaustion. Do you seek us to expedite this appeal? The opposing counsel says they're not opposed to it. Do you seek us to or are you not opposed to it? Well, Your Honor, if this court — If you lose on your restriction point. If we do not get the stay. Sure. If we do not get the stay at all, then we would. I'm not — you don't get to pick about whether you get the stay or not. Do you get it expedited? Assuming you don't win on jurisdiction dismissal today, do you want the case — you have to pick that before you know whether you're getting a stay. Well, Your Honor, we would welcome expedited proceedings on the preliminary injunction appeal. Our primary contention before this Court, of course, today, is that this Court should enter the stay because of the strong likelihood of success on the merits, both because that the Court didn't have authority, whether you call that jurisdictional or a claims processing rule, or — What you really want to say is I want you to hurry up if I'm going to win. But if I'm going to lose, no hurry. No, no, no. No, no. No, Your Honor. That's what you'd like to say, isn't it? No, Your Honor. We want a stay — That's what I'd say. We want a prompt stay decision. We would like a prompt stay decision either way. And then we want — to the extent a stay is not entered, of course we want expedited preliminary injunction proceedings because of the ongoing injury to the NFL. Okay. Thank you very much. How much time do you need? We'd like to do this in a timely fashion. I told you you could respond to that case that was cited. Oh, I don't think we'll need much time. We can file the letter tomorrow. Again, for the reasons that are already articulated here, I don't think it will make a difference. Okay. Thank you both for a very lively and informative argument. We'll try to get back to you as soon as we can. Thank you, Your Honor. The court will be in recess.